Baxter *vs.* Abercrombie.

NATHANIEL N. BAXTER, plaintiff in error, *vs.* CHARLES
ABERCROMBIE, defendant in error.

(BROWN, C. J., did not preside in this cause, having been of counsel in it below.)

The Stay-resolution of the General Assembly of Georgia, of February,
1870, did not stop proceedings in its Supreme Court. (R.)

Stay-resolution. Wife as witness. Relief. Before Judge
PARROTT. Gordon Superior Court. October Term, 1869.

Abercrombie sued Baxter upon his three promissory notes,
dated the 31st of August, 1860, two for $1,000 00 each, and
the other for $822 00, due on the 25th of December, 1860,
1861 and 1862, respectively, averring that the two former
were not in his possession because Baxter had fraudulently
obtained possession of them. The defendant pleaded the
general issue and payment in full.

On the trial it was shown by plaintiff's witnesses, substan-
tially, as follows: On said day, in 1860, Baxter bought cer-
tain land from Abercrombie, at $3,000 00, paid him some
cash, and gave these notes for the balance of the purchase-
money. About the same time, Abercrombie bought of one
Fields certain other land and gave him his note for $1,500 00.
In February, 1863, Abercrombie had not paid Fields, and
Baxter had paid only about $500 00 of his notes. In this
state of the matter Baxter called on Abercrombie, who be-
longed to the Confederate States Army, and wished to pay
his notes in Confederate currency. Abercrombie refused to
accept it, saying that he would not take such currency unless
Fields would take it from him in payment of his note. Bax-
ter then said he would go to Fields and take up Abercrom-
bie's note, and get a deed from Fields to Abercrombie for
Abercrombie's land, and then take up his (Baxter's) notes.
Abercrombie said that he would, before his return to the
army, instruct his wife to deliver to Baxter his notes when
Baxter brought the deed and Abercrombie's notes from Fields
to her. He gave his wife such instructions, and expressly
told her not to accept anything from Baxter in payment of

his notes unless it was his own notes and deed, as aforesaid, or such currency as Fields would accept from him. Fields had refused to accept Confederate currency from him. Abercrombie went back to the army; Baxter did not go to see Fields, but went to Mrs. Abercrombie and offered to pay the notes in Confederate currency. She refused, at first, to accept it, saying she would take no currency which Fields would not take. Baxter told her that the Congress of the Confederate States had made such currency a legal tender, and that if she refused to accept it the debt would be, in law, paid; that Fields would be compelled by law to accept it from her, or his debt would be, in law, paid. She wished him to see Fields first, but he said Fields was from home and would not be back for two or three weeks. Believing his statements, she accepted the currency for the balance due on said two first mentioned notes; went at once to see Fields, who had not been from home; offered him the same bills; he refused to accept them, and then, within a week from the time she had received them, she went to Baxter and tried to get him to take them, but he would not.

Part of this testimony was given by Mrs. Abercrombie. She was objected to as incompetent, but the objection was overruled.

The defendant testified that he only told Mrs. Abercrombie that it was rumored that Congress had passed such a law, and denied saying that if Fields did not accept the currency his debt would be, in law, paid, and denied saying Fields was from home. He further testified, that the land which he bought was worth, at the trial, only $1,000 00, that he lost, by the war, and without his fault, twenty slaves, worth $600 00 each, stock worth $1,000 00, and something more by depreciation in the value of his other lands.

Another witness put the present value of the land bought by Baxter at $600 00. Another witness testified that she heard Abercrombie say, Baxter paid him $1500 00, or $1600 00, in Confederate currency for land, and that he funded the same.

Defendant's counsel requested the Court to charge the

jury substantially, that if credit was given upon the faith of Baxter's property, and it "was lost by the war, and the said plaintiff was in the Confederate army, or was engaged in said rebellion, and gave aid and encouragement to the same, these facts and circumstances combining together, are sufficient to authorize the jury to reduce the amount of the debt sued for, according to the Equities of the case, and render such verdict as to them shall appear just and equitable." The Court refused so to charge. He told the jury what evidence was admissible under the Relief Act of 1868. But he charged them that if said notes were intended to be paid in Confederate currency, they might consider such tender, but that it must be made like a tender of chattels, according to section 2824 of the Code, that if the note was made prior to the war and payable in "dollars," nothing could authorize them to reduce the note, or consider said tender as legal, unless it was made according to law, section 2823, Code; that no reduction could be made because of a loss of property, unless plaintiff caused the loss in some way, and that plaintiff, being a Confederate States soldier, was not to be considered by the jury. He further charged that the payment to the wife was bad, unless she had authority to accept it.

The jury found for the plaintiff $2420 00 principal, and $1131 73 interest and costs of suit.

Defendant's counsel moved for a new trial, upon the grounds that the verdict was contrary to Equity, etc., that the Court erred in allowing plaintiff's wife to testify, and in refusing to charge as requested, and in charging as he did. The refusal of a new trial is assigned as error.

When the cause was called for a hearing, (10th of March, 1870), the hearing was objected to because of the Stay-resolution of the General Assembly, (the limitation of which had not expired,) and which was as follows:

"Resolved, by the General Assembly, That all the proceedings in the several Courts of this State, founded on any debt or contract made or entered into before the first of June, 1865, and all levies and sales by virtue of any execution so founded shall be, and are hereby stayed until twenty days

Baxter *vs.* Abercrombie.

after the recess taken by this General Assembly shall have expired.

"Resolved, That the General Assembly, in compliance with the just demand of the people, earnestly appeal to Major-General A. H. Terry, to sanction and enforce the above Reslution, after its approval by the Provisional Governor."

It had been approved by the Provisional Governor, but not by Major-General Terry.

The Court expressed no opinion as to the validity of the Resolution, so far as other Courts were concerned, but said that under the Constitution, this Court must "dispose of every case at the first or second term after such writ of error is brought; and in case the plaintiff in error shall not be prepared at the first term to prosecute the case, unless prevented by Providential cause, it shall be stricken from the docket and the judgment below shall stand affirmed," (Article V, section 11, paragraph 111,) and ordered the cause to proceed. The cause was argued, but the two Judges disagreeing, the judgment below stood affirmed, under the fourth paragraph of said article of the Constitution. As no opinions were written out, it does not appear as to what they differed.

W. H DABNEY, for plaintiff in error.

D. A. WALKER, for defendant.